FILED
RICHARD W. NAGEL
CLERK OF COURT

2021 SEP 16 AM 11: 02

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
KEVIN JOHNSON,
Plaintiff,
v.
ANNETTE CHAMBERS-SMITH, Director, Ohio Department of Rehabilitation and Correction (ODRC),
N. HARRIS, Investigator, Ohio Correctional Receptional Center (OCRC),
MR. CHILCOTE, deputy warden, OCRC,
MR. SALAS, deputy warden, OCRC,
JAMEZ, law library supervisor, OCRC,
MEYERS, assistant law library supervisor, OCRC
MR. CHURCH, Correctional Officer (c/o) captain, OCRC,
E. COREY, c/o OCRC,
RONALD ERDOS, Warden, Southern Ohio Correctional Facility (SOCF),
LINNEA MAHLMAN, Institutional Inspector, SOCF,
MR. DENNEY, investigator, SOCF,
MS. REUTER, law library supervisor, SOCF,
JOSHUA MCALLISTER, (c/o) sergeant, SOCF,
MR. HAYWOOD, c/o lieutenant, SOCF
SERVE AT: Ohio Attorney General
30 E. Broad St.
Columbus, OH 43215
HAROLD CLARKE, Director, Virginia Department of Corrections (VDOC),
KYLE ROSCH, Interstate Compact Officer, VDOC,
SERVE AT: VDOC
6900 At more Dr.
Richmond, VA 23225
RONALD E. CARTER, Director, Indiana Department of Corrections (IDOC),
M. PHILLIPS, c/o, Wabash Valley Correctional Facility (WVCF), IDOC,
MR. BEAN, c/o WVCF,
SERVE AT: Indiana Attorney General
302 W. Washington St.
Indianapolis, IN 46204-2770
Defendants.

2 21CV4635

Judge Watson

MAGISTRATE JUDGE DEAVERS

CIVIL ACTION COMPLAINT

PARTIES

1. Comes Now your plaintiff who is confined within the ODRC as Kevin Johnson, No. A787991 at SOCF, P.O. Box 45699, Lucasville, OH 45699.

2. The defendants herein are officials who were at all times relevant hereto employed by and within the ODRC, the VDOC, or the IDOC, respectively. Each defendant was at all times relevant to the claims set out herein acting under color of state law. Each defendants' official duties and responsibilities are characterized by their official titles as set out in the caption of this document following their names. The defendants are being sued in their personal capacities for damages and official capacities for injunctive and declaratory relief.

CHARGE AND INTRODUCTION
3. Defendants are being sued by plaintiff under 42 U.S.C. Section 1983 for violating his rights against the U.S. Constitution's 1, 4, 8, and/or 14 Amendments, by subjecting him to racial and political discrimination (sec 2), denial of court access & to petition the government for redress (sec 1 & 6), procedural and substantive due process (sec 3 & 4), freedom of speech and press (sec 1, 5 & 6), and deliberate indifference to his safety (sec 4), retaliation for exercising his rights to court access and free press and speech (sec 1 through 6), etc.

EXHAUSTION OF ADMINISTRATIVE REMEDIES
4. Plaintiff has exhausted all administrative remedies to the extent made available to him by correctional officials.

STATEMENT OF FACTS
-Section 1-
5. Plaintiff has been imprisoned since 1990 based upon Virginia criminal adjudications which have been conceded by VA's attorney general and other officials to be invalid as to him. He has been held outside of Virginia since 2012 in various states where he has been unable to successfully litigate against his admittedly unlawful confinement because he has no access to Virginia laws, denial of access to and use of his legal property, etc.
6. Plaintiff is a widely published author and artist who has had many articles published on a wide range of subjects including politics, history, economics, prison and jail conditions, etc.
7. Plaintiff was confined in the IDOC from Nov 2018 through July 2021. While in IDOC custody plaintiff initiated several federal lawsuits in the U.S. District Court for the Southern District of Indiana, against defendant Carter and other IDOC officials and IN-based private medical contractors, cases styled Johnson v. Carter, case # 2:20-cv-00602 and Johnson v. Purdue, case # 1:21-cv-00201. Both of those suits which are still pending were screened and found by the district court to state valid claims for violations of his constitutional rights.
8. During the week of June 27, 2021 defendant Phillips stated to plaintiff several times that she was told to inform him that if he didn't stop his litigations against IDOC officials he would be transferred to another state where he would not like his treatment. This was a threat originating from defendant Carter meant to intimidate plaintiff into dismissing his aforesaid lawsuits. Plaintiff did not drop his lawsuits.
9. Because plaintiff did not submit to these threats he was on July 12, 2021 confronted by defendant Phillips and other WVCF c/o's who had him taken to a transport area at WVCF where he was from that point picked up by VDOC transport officers and transported to OCRC. Plaintiff was given no prior notice and opportunity for hearing for this transfer.
10. Plaintiff requested defendants Phillips and Bean to take with him property he needed that was relevant to the aforesaid court cases, because he had a pending summary judgment reply deadline in one case and a pre-trial discovery response deadline in the other. Phillips, Bean, and other WVCF c/o's refused to allow plaintiff to take any property with him at all stating that per defendant Carter's office he could not take anything with him. Plaintiff was denied to take any property with him and his property has been since denied to him with deliberate intentions of defendants to prevent his ability to write article and pursue these federal cases and to cause him to lose them.
11. This transfer from IDOC to ODRC was in deliberate retaliation upon meeting of minds of defendants Clarke, Rosch, Chambers-Smith, Erdos, and others for his writing published articles

exposing and critical of conditions within the VDOC and IDOC, and for his federal suits mentioned above, and with intentions to obstruct his ability to continue writing such articles and pursuing his pending and any anticipated litigations while in ODRC custody.

12. While confined at OCRC from July 12-29, 2021, plaintiff requested and was denied writing supplies, access to and use of a law library, and all other needed legal assistance by defendants Jamez, Meyers, Chilcote, Salas and others, whom he informed of needing this assistance in order to meet the aforementioned deadlines. Because he was denied this assistance he missed those deadlines.

13. During August 2019 plaintiff was subjected to direct assault with tear gas by IDOC officers who sprayed gas indiscriminately on him and others who were locked inside individual cages on a recreation yard, because one c/o became angry with an inmate who was locked in a separate cage because he called the c/o lazy. The c/o's angry response to this remark which plaintiff had nothing to do with was the sole reason gas was sprayed on everyone on the recreation yard and plaintiff was contaminated. Plaintiff desired to file federal suit against this assault for excessive force and denied decontamination but was prevented from doing so because of being denied all his legal property since July 12, 2021 by defendants Clarke, Carter and Chambers-Smith withholding it from him and the two-year statute of limitations expiring during this time. All information needed to file that suit is in plaintiff's property including the names of the involved IDOC staff, the date of the incident, etc.

14. Because of his denied property plaintiff has been unable to write articles which willing publishers requested and contracted him to write with submission deadlines.

- Section 2 -

15. While at OCRC Plaintiff was confronted by defendant Harris who informed plaintiff that he was being gang profiled because he supports a predominantly Black political party, that happens to use 'Black Panther' in its name. Harris could tell plaintiff nothing about the party in question, not even its name, except that it was believed to have a predominantly Black membership. This racial configuration thus formed the sole basis upon which Harris, who is white, established that this party and plaintiff would be criminal gang profiled and suppressed as gang activity within the entire ODRC. Based upon this profiling Harris informed plaintiff that he would be specially targeted by Security Threat Group (STG) or gang staff, such as himself and defendant Denney, throughout ODRC for repressive treatment and monitoring.

16. This gang profiling of plaintiff was and is really a pretext contrived by defendants for targeting plaintiff's mail and other communications with persons in and outside the ODRC to stop his published writings and litigations based on the stated intentions of defendants set out in Section 1 above.

17. The party which plaintiff supports is the Revolutionary Intercommunal Black Panther Party (RIBPP), which is a legal, above-ground, non-violent, Socialist and predominantly Black independent political party, that promotes and has been involved in nothing criminal nor gang-related, nor can any such things be attributed to it. Harris and his colleagues targeting this party and plaintiff as supposedly gang or STG-affiliated is based upon racial and political discrimination, i.e. because it is not a predominantly white, mainstream, pro-capitalist political party.

-Section 3-

18. While at OCRC plaintiff was held in solitary confinement and initially denied all ability to communicate with his family, friends and attorneys. Consequently, many people on the outside began calling and emailing OCRC, defendant Chambers-Smith's office, defendant Clarke's office

and others complaining about this treatment. It was then established by the OCRC administration that plaintiff would be allowed to use the telephone daily and a JPay kiosk that allowed those confined at OCRC to correspond by emails with persons on the outside.

19. On July 23, 2021, defendants Church and Corey came to plaintiff's assigned cell to allow him out for his daily recreation period. Church did not want to let plaintiff out to use the phone, so he refused plaintiff's recreation and had defendant Corey fabricate a disciplinary infraction claiming falsely that plaintiff refused his own recreation period and threatened them. This fabricated report was used to strip plaintiff of the ability to communicate with outside people and without notice or opportunity for a fair hearing, which he will further elaborate in Section 3 below.

20. In the ODRC defendant Chambers-Smith enforces an inmate disciplinary procedure that allows staff to strip inmates of the ability to communicate with outside people and other punishments affecting constitutionally protected rights, based upon infractions that the inmate receives no prior written notice of nor the opportunity to prepare any defense against nor submit evidence to refute. This is the procedure plaintiff was subjected to on the infraction that Corey fabricated against him. The very fact that no due process is afforded encourages ODRC staff to fabricate reports against inmates.

-Section 4-

21. Plaintiff was transferred from OCRC to SOCF on July 29, 2021. SOCF is widely known for its abusive conditions and where inmates are sent who are targeted for retaliation abuse because of reputations as litigators, challenging prison abuses, and so on. Plaintiff was sent to SOCF specifically for the purpose of retaliatory abuse and retaliation.

22. On the next day plaintiff was called into an office by defendant McAllister who proceeded to threaten and make a range of provocative remarks to plaintiff. McAllister told plaintiff he knew all about plaintiff, his history of writing about prisons and litigating and that it wouldn't be tolerated at SOCF. That plaintiff was 'marked' and that he was sent to SOCF for this reason. Defendants Chambers-Smith and Erdos know and allow SOCF to be operated in this manner with no regard for inmates' legal rights, safety, or wellbeing, and refuse to exercise oversight over staff at SOCF in the interest of protecting its inmates from abuses. Inmates at SOCF are subjected to conditions of rampant abuse, violence and arbitrary mistreatment by staff.

23. McAllister threatened that plaintiff was going to be set up to be assaulted, would not receive any property, and he expressed not knowing why plaintiff was housed in general population and not solitary confinement. He described himself and other SOCF staff as 'real dirty cops' who are 'worse than the Klan.'

24. Several hours after this McAllister called plaintiff into the office again this time to tell plaintiff he had received a disciplinary infraction while at OCRC, namely the infraction fabricated by defendant Corey, and that he was going to 'hear' the infraction right then. This was the first time plaintiff ever heard or knew that Corey had written the infraction and he was allowed no opportunity to prepare his defense nor submit evidence although video records from OCRC would show plaintiff did not do anything Corey's report alleged.

25. McAllister gave plaintiff a copy of Corey's report (again this was the first plaintiff ever knew of the report) and held a hearing on it at the same moment. McAllister denied him any opportunity to prepare a defense or submit evidence and found him guilty. As a penalty he placed plaintiff on telephone and commissary restriction for 30 days. These restrictions operated to ban plaintiff from using the telephone or purchasing stationery and mailing supplies so he couldn't communicate or correspond with outside people or the courts. They also prevented his receiving a GTL tablet which has a legal research app on it, thus denying plaintiff access to the

only meaningful avenue of performing legal research at SOCF, thus frustrating his ability to pursue his pending and anticipated cases. This also presented an especial hardship because of the pandemic and preventing plaintiff from communicating with loved ones who have been sick with COVID-19 and facing potential death. Actually McAllister maliciously imposed the phone restriction despite that the ODRC has forbidden the imposition of such restrictions because of the pandemic and so inmates can receive special free calls made available each week in response to the pandemic.

26. Plaintiff was never given any orientation into the ODRC's disciplinary, grievance, nor any other procedures, and was thus subjected to these and many others treatments and conditions without any informed explanation on how the ODRC and its rules operate.

27. Since plaintiff has been at SOCF he has been subjected to treatments and conditions calculated to place him in imminent danger of death and serious physical harm and fear of such harm, by defendants McAllister, Denney, Erdos, and many others. They have repeatedly tried to incite other inmates and groups to attack plaintiff and into violent altercations with him, by spreading false rumors against plaintiff that he is an informant, they have offered many inmates payment in contraband to attack plaintiff in groups, with weapons, and to simply punch him and retreat informing them that responding staff are aware and prepared to 'take over from there,' namely to beat plaintiff and portray resultant injuries as having been sustained during the altercation with the other inmate(s).

28. The threat and preparation to subject plaintiff to assault by staff and/or inmates spans the entire security staff at SOCF. Plaintiff and his outside contacts have been confronted by numerous inmates with evidence of various SOCF staffs' offers to pay them in contraband to attack plaintiff or set him up to be attacked by staff under the guise of responding to a fight between plaintiff and other inmates which they have engineered. These offers have been made by defendant McAllister and others, and efforts to incite others against plaintiff have been made by defendant Denney and others.

-Section 5-

29. Prior to his confinement within ODRC plaintiff had and still has numerous subscriptions to various print periodicals: newspapers, magazines, newsletters. Many of those subscriptions are free of charge because he writes for and corresponds with a number of them and their publishers.

30. At SOCF plaintiff has been denied to receive any of his subscription media because defendant Erdos requires that all subscriptions be paid for and such payments be made solely by persons on the receiving inmate's visitation lists. This arbitrarily denies subscriptions like plaintiff's that are free, and limits or bans subscriptions from persons who may not want to be on an inmate's visiting list, to provide personal information to SOCF officials that those lists request, and places the financial burden of providing subscriptions on a select group of people that may not have the resources to pay for subscriptions the inmate wants or could otherwise receive from those not on his visiting list.

31. Some of plaintiff's subscriptions were paid for, but because they were bought before he came into ODRC custody and by people not on his ODRC visiting list beforehand, he is denied his publications.

32. There is no valid penological objective for this practice except to deny plaintiff and inmates at SOCF access to information, and to frustrate plaintiff's ability to write and get his wrings published.

-Section 6-

33. While plaintiff has been at SOCF he has received various response deadlines and pretrial

scheduling orders in the aforementioned pending federal lawsuits. He has been unable to meet these deadlines or pursue those pretrial proceedings because he continues to be denied access to all of his legal property which includes his work product materials, evidentiary materials, case files, research notes and all other materials relevant to those cases, and he has been consistently denied basic access to the SOCF law library and research materials by defendants Reuter and Malhman, and because of denial of access to a GTL tablet which has a Lexis legal research app by actions of defendant McAllister as stated in paragraph 25, supra.

34. To further prevent plaintiff's ability to communicate with people on the outside, defendant Haywood, who supervises the SOCF mailroom, and his colleagues in said mailroom have been withholding plaintiff's incoming and outgoing mail without notice to him or his correspondents. Plaintiff bases the foregoing facts on personal knowledge and swears to the truth of those facts under penalty of perjury.

Plaintiff demands trial by jury on all issued so triable.
WHEREFORE, plaintiff seeks the following relief from this court:
A. Compensatory, punitive, and nominal damages against defendants jointly and severally in such sum in excess of $20 as a jury finds fair and just;
B. Injunctive relief, preliminary and permanent, as the court finds fair and just;
C. Judgment declaring plaintiff's rights and defendant having violated them against the Constitutional provisions set out in paragraph 3, supra;
D. Pre- and post-judgment interest;
E. Any further relief the court finds fair and just.

Respectfully submitted,

_____

Plaintiff pro se

Reply to: Kevin Johnson, No. A787991
Southern Ohio Correctional Facility
P.O. Box 45699
Lucasville, OH 45699