## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**KEVIN JOHNSON,**

       **Plaintiff,**

**v.**                              **Case No.  2:21-cv-4635**
                                           **JUDGE MICHAEL H. WATSON**
                                         **Magistrate Judge Elizabeth P. Deavers**

**ANNETTE CHAMBERS-SMITH, *et al*.,**

       **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiff Kevin Johnson, a Virginia state inmate proceeding *pro se*, brings this prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Defendants in Ohio, Indiana and Virginia.  (ECF No. 1.)  Plaintiff paid the filing fee and does not seek leave to proceed *in forma pauperis*.  This matter is before the Court for an initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915A to identify cognizable claims and recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Having performed the initial screen, for the reasons that follow, the Undersigned **RECOMMENDS** that the Complaint be **DISMISSED**.

## I.     STANDARD

"District courts are required to screen *all* civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is *pro se*, or is represented by counsel, as the statute does not differentiate between civil actions brought by prisoners." *Espinoza Vallecillo*

*v. Michigan*, No. 2:19-CV-13354, 2020 WL 85929, at *2 (E.D. Mich. Jan. 7, 2020) (quoting *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) (emphasis added)). Plaintiff prepaid the filing fee for this action. Accordingly, the Court may not summarily dismiss his Complaint under 28 U.S.C. § 1915(e)(2) because that section applies only to complaints filed *in forma pauperis*. (*Id.*) (citing *Benson v. O'Brian*, 179 F.3d 1014, 1015-17 (6th Cir. 1999)). Rather, because Plaintiff has named a governmental official or entity as defendant, the Court is required to conduct a screening pursuant to § 1915A. *Hyland v. Clinton*, 3 F. App'x 478, 478-79 (6th Cir. 2001).

Congress enacted 28 U.S.C. § 1915A, as part of the Prison Litigation Reform Act, Pub.L. 104–134, 110 Stat. 1321, enacted in April 1996, in order to "discourage prisoners from filing [frivolous] claims that are unlikely to succeed." *Crawford-El v. Britton*, 523 U.S. 574, 596 (1998). Congress directed the Courts to "review, before docketing, if feasible or in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In particular, subsection (b) provides:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or—
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b). Thus, § 1915A requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines*

3

*v. Kerner*, 404 U.S. 519, 520 (1972)).  This lenient treatment, however, has limits; "'courts

should not have to guess at the nature of the claim asserted.'"  *Frengler v. Gen. Motors*, 482 F.

App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## II.    BACKGROUND

Plaintiff, a Virginia state prisoner serving a life sentence, brings this civil rights action

under 42 U.S.C. § 1983 against Defendants in Ohio, Virginia and Indiana, in both their

individual and official capacities.  The named Ohio Defendants are Annette Chambers-Smith,

Director, Ohio Department of Rehabilitation and Correction ("ODRC"); N. Harris, Investigator,

Ohio Correctional Reception Center (OCRC); Mr. Chilcote, Deputy Warden, OCRC; Mr. Salas,

Deputy Warden, OCRC; Jamez, law library supervisor, OCRC; Meyers, assistant law library

supervisor, OCRC; Mr. Church, correctional officer, OCRC; E. Corey, OCRC; Ronald Erdos,

Warden, Southern Ohio Correctional Facility (SOCF); Linnea Mahlman, Institutional Inspector,

SOCF; Mr. Denney, Investigator, SOCF; Ms. Reuter, law library supervisor, SOCF; Joshua

McAllister, SOCF; and Mr. Haywood, SOCF.  The Virginia Defendants are Harold Clarke,

Director, Virginia Department of Corrections (VDOC), and Kyle Rosch, Interstate Compact

Officer, VDOC.  The Indiana Defendants are Ronald Carter, Director, Indiana Department of

Corrections (IDOC), M. Phillips, Wabash Valley Correctional Facility (WVCF), and Mr. Bean,

WVCF.  (ECF No. 1, at PAGEID # 1.)  Plaintiff states "[t]he defendants are being sued in their

personal capacities for damages and official capacities for injunctive and declaratory relief."

(*Id*.)

According to the Complaint, Plaintiff is serving a sentence of imprisonment stemming

from a 1990 Virginia state conviction, but has been held outside the State of Virginia since 2012,

through the use of interstate corrections compacts. (*Id*. at PAGEID # 2.) Plaintiff represents that he is a widely published author and artist who has published many articles on a wide range of subjects including politics and prison and jail conditions. (*Id*.) Plaintiff alleges the following causes of action in the Complaint:

> 3. Defendants are being sued by plaintiff under 42 U.S.C. Section 1983 for violating his rights against the U.S. Constitution's 1, 4, 8, and/or 14 Amendments, by subjecting him to racial and political discrimination (sec 2), denial of court access & to petition the government for redress (sec 1 & 6), procedural and substantive due process (sec 3 & 4), freedom of speech and press (sec 1, 5 & 6), and deliberate indifference to his safety (sec 4), retaliation for exercising his rights to court access and free press and speech (sec 1 through 6), etc.

(*Id*.)

Plaintiff states he was confined through the Indiana Department of Corrections from November 2018, through July 2021, and while in IDOC custody, he initiated several federal lawsuits against Defendant Carter and other IDOC officials. (*Id*.) Those cases, *Johnson v. Carter*, 2:20cv602 and *Johnson v. Purdue*, 1:21cv201, remain pending in the United States District Court for the Southern District of Indiana. Plaintiff contends that "[d]uring the week of June 27, 2021 defendant Phillips stated to plaintiff several times that she was told to inform him that if he didn't stop his litigations against IDOC officials he would be transferred to another state where he would not like his treatment." (*Id*.) Plaintiff characterizes the interaction as "a threat originating from defendant Carter meant to intimidate plaintiff into dismissing his aforesaid lawsuits." (*Id*.)

Subsequently, on July 12, 2021, Plaintiff was picked up by Virginia Department of Corrections transport officers and transported to the Ohio Correctional Reception Center. (*Id*.) Plaintiff asserts that he was not given prior notice of the transfer and was not permitted to take

any personal papers and property with him.  Plaintiff contends that access to his personal property was necessary to comply with approaching deadlines in his pending and anticipated federal court cases.  (*Id*.)  Plaintiff asserts that his transfer from IDOC to OCRC "was in deliberate retaliation upon meeting of [the] minds of defendants Clarke, Rosch, Chambers-Smith, Erdos, and others for his writing published articles exposing and critical of conditions within the VDOC and IDOC, and for his federal suits mentioned above, and with intentions to obstruct his ability to continue writing such articles and pursuing his pending and any anticipated litigations while in ODRC custody."  (*Id*. at PAGEID # 2-3.)

Plaintiff further alleges that while he was confined at OCRC, he was "denied writing supplies, access to and use of a law library, and all other needed legal assistance by defendants Jamez, Meyers, Chilcote, Salas and others, whom he informed of needing this assistance in order to meet the aforementioned deadlines."  (*Id*. at PAGEID # 3.)  Additionally, Plaintiff claims that while at OCRC, he was subjected to racial and political discrimination because he was "gang profiled" due to his support of the Revolutionary Intercommunal Black Panther Party.  (*Id*.)  Plaintiff's additional allegations concerning his time at OCRC include being placed in solitary confinement, denial of the opportunity to communicate with friends, family and attorneys, and fabricated disciplinary infractions.  (*Id*.)

On July 29, 2021, Plaintiff was transferred from OCRC to Southern Ohio Correctional Facility (SOCF).  Plaintiff alleges that while at SOCF, he was denied access to his various subscriptions to print periodicals and media, and that because he was found guilty of a fabricated disciplinary infraction, he was placed on telephone and commissary restrictions for 30 days.  The restrictions, Plaintiff alleges, denied him the opportunity to use the telephone or purchase

6

stationary and mailing supplies, resulting in his inability to correspond with outside people or the courts, and causing him to miss filing deadlines. (*Id*. at PAGEID # 4.) Plaintiff further alleges that he feared for his safety while at SOCF, because Defendants Erdos, McAllister, Denney and "many others" tried to incite other inmates to attack him. Plaintiff seeks compensatory, punitive and nominal damages against Defendants, as well as injunctive and declaratory relief. (*Id*. at PAGEID # 6.)

## III.    DISCUSSION

Plaintiff alleges the various Defendants violated or infringed upon his right to seek court access and petition the government for redress by subjecting him to retaliatory transfers to different prisons and by withholding his mail and personal property, causing him to miss filing deadlines and interfering with his rights to freedom of speech and press. (*See* Complaint, sections 1, 5, and 6, ECF No. 1, at PAGEID # 2, 5-6.) Plaintiff also alleges that he was subjected to racial and political discrimination at OCRC because he was gang profiled, (*see* Complaint, section 2, *Id*. at PAGEID # 3), that he was denied procedural and substantive due process in connection with transfers and grievance procedures, (*see* Complaint, sections 3 and 4, *Id.* at PAGEID # 3-5), and that defendants exhibited a deliberate indifference to his safety, (*see* Complaint, section 4, *Id*. at 4-5.) Upon review, Plaintiff's various claims fail to survive the Court's screening under the Prison Litigation Reform Act.

### A.  Claims for Injunctive Relief

Plaintiff seeks injunctive relief in this case. The Undersigned **RECCOMENDS** that Plaintiff's claims for injunctive relief be dismissed because Plaintiff is no longer incarcerated within the Indiana or Ohio prison facilities named in this suit. Since the filing of this action,

Plaintiff has been transferred back to the originating state of Virginia, specifically to Nottoway Correctional Center in Burkeville, Virginia.  "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive or declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *see also Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief "moot" because inmate was no longer confined to the institution where the alleged wrongdoing occurred); *Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) ("A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.") (citing *Kensu*, 87 F.3d at 175).  Accordingly, the Undersigned finds that Plaintiff's requests for injunctive and declaratory relief are **MOOT**, because he is no longer incarcerated at any of the institutions where his claimed constitutional injuries occurred and **RECOMMENDS** that Plaintiff's claims in this regard be **DISMISSED**.

**B.  Claims Against Defendants in Their Individual Capacities**

Having recommended dismissal of any claims for injunctive and declaratory relief, only Plaintiff's claims for money damages against the Defendants in their individual capacities remain.  For the reasons that follow, the Undersigned **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED** against the individual Defendants.

**1.  Claims against Virginia Defendants Clarke and Rosch, and Ohio Defendants Chambers-Smith, Mahlman, Reuter, Haywood, Jamez and Meyers**

Plaintiff names Harold Clarke, Director, VDOC, and Kyle Rosch, Interstate Compact Officer, VDOC, as Defendants in this matter and sues them in their individual capacities. Although Plaintiff names Clarke and Rosch in the caption, and asserts, generally, that these

Defendants conspired with the Ohio and Indiana Defendants to interfere with his access to the courts, the Complaint does not contain any specific allegations about VDOC Director Clarke or Interstate Compact Officer Rosch.

Likewise, Plaintiff names Annette Chambers-Smith, Director of ODRC, Linnea Mahlman, Institutional Inspector, SOCF, Reuter, law library supervisor, SOCF, Haywood, mailroom supervisor, SOCF, Jamez, law library supervisor, OCRC, Meyers, assistant law library supervisor, OCRC, Chilcote, deputy warden, OCRC, and Salas, deputy warden, OCRC, as Defendants in this matter. Other than naming these Defendants in the case caption and associating them with their respective work assignments, Plaintiff does not assert specific allegations against them or allege their personal involvement in the activities which form the basis of the alleged unconstitutional behaviors.

"The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)). *See also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of claims where the complaint "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights").

Thus, "[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints." *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012).

Defendants likewise "cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992)) (citing *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978)). "Rather, individuals sued in their personal capacity under § 1983 are liable only for their own unconstitutional behavior." *Hollis v. Erdos*, 480 F. Supp. 3d 823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011)). To the extent that any of the named Defendants may hold supervisory positions over other Defendants, there are no allegations in the Complaint that would allow them to be held liable on that basis. To do so, Plaintiff must allege "'[a]t a minimum' . . . that the defendant[s] 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Graves v. Malone*, 810 F. App'x 414, 420 (6th Cir. 2020), *cert. denied sub nom. Hedger v. Graves*, 141 S. Ct. 2698 (2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)). There are no allegations of such personal involvement by the above Directors or supervisors presented here.

Accordingly, the Undersigned **RECOMMENDS** that the claims against Virginia Defendants Clarke and Rosch, and Ohio Defendants Chambers-Smith, Mahlman, Reuter, Haywood, Jamez, Meyers, Chilcote and Salas be **DISMISSED**, because Plaintiff has not set forth specific allegations against them.

### 2. Retaliation and Denial of Right to Court Access

Plaintiff alleges the Indiana Defendants retaliated against him for filing civil suits in federal court in Indiana. The Indiana Defendants are Ronald Carter, Director of IDOC, and M. Phillips and Mr. Bean of Wabash Valley Correctional Facility in Indiana (WVCF). (ECF No. 1, at PAGEID 1.) Specifically, Plaintiff alleges that during the week of June 27, 2021, Defendant Phillips warned him that if he did not "stop his litigations against IDOC officials he would be transferred to another state where he would not like his treatment." (*Id*. at PAGEID # 2.) Plaintiff alleges that on July 12, 2021, he was "confronted" by Defendant Phillips and other unnamed WVCF corrections officers who took him to a transport area where he was picked up by unnamed VDOC transport officers. (*Id*. at PAGEID # 2.) Plaintiff claims that he asked Defendants Phillips and Bean if he could take his personal property with him but was told that "per defendant Carter's office he could not take anything with him." (*Id*.) Plaintiff asserts his personal property was necessary to the litigation of pending and future lawsuits. (*Id*.)

Plaintiff asserts that the Virginia Defendants, as well as certain Ohio Defendants, are also responsible for denying him access to the courts and retaliation. Without offering any factual basis, Plaintiff concludes that his transfer was the product of a "meeting of [the] minds" of the Virginia Defendants (Clarke, Director of VDOC, and Rosch, VDOC Interstate Compact Officer), as well as the Ohio Defendants (Chambers-Smith, Director, ODRC, and Erdos, Warden, SOCF), and "others" for his writing published articles exposing conditions within the VDOC and IDOC, and for his pending federal suits. Plaintiff asserts that Defendants intended "to obstruct his ability to continue writing such articles and pursuing his pending and any anticipated litigations while in ODRC custody." (*Id*. at PAGEID # 3.) Plaintiff further alleges that while confined at

11

OCRC from July 12-29, 2021, he "was denied writing supplies, access to and use of a law library, and all other needed legal assistance." (*Id*. at PAGEID # 3.)

The gist of Plaintiff's claim is that he was transferred from the IDOC to the ODRC in retaliation for filing civil rights lawsuits, and that Defendants withheld his personal property in order to interfere with his right to access the courts. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am*., 102 F.3d 810, 814 (6th Cir. 1996). It has long been recognized that inmates have a constitutional right, grounded in the First Amendment, to access the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts"). That right is not, however, unlimited nor parallel to the right of access to the courts enjoyed by non-incarcerated citizens. Rather, prisoners have a constitutional right to access the courts only to present legal claims relating either to their convictions and sentences or to the conditions of their confinement. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (describing this right as a "carefully bounded right" and not a "generalized 'right to litigate'") (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)).

Because the right in question does not confer on prisoners an unfettered right to pursue all types of legal claims, in order for the right to be infringed, there must be a relationship between the actions which any particular inmate claims to be unconstitutional and that particular inmate's ability to file or pursue either a direct appeal, a collateral attack on a conviction or

12

sentence, or a civil rights action dealing with conditions of confinement. In *Lewis v. Casey*, the Supreme Court conceived of this limitation as an issue of standing, holding that any inmate pursuing a claim under *Bounds v. Smith* "must show actual injury." 518 U.S. at 349. The Sixth Circuit has explained that a prisoner "can only achieve standing if he alleges a personal injury fairly traceable to a redressable wrong committed against him." *Thadeus-X*, 175 F.3d at 392.

Consequently, it is not enough for a plaintiff simply to claim that he was denied access to the courts, or allege that he did not have access to an adequate law library or some alternate form of legal assistance. To state a claim upon which relief may be granted, a plaintiff must allege facts sufficient to infer that a defendant's conduct had an actual impact on the plaintiff's ability to pursue either an attack on his conviction or sentence, or on a civil rights action dealing with allegedly unconstitutional conditions of confinement. Because this issue is one of standing, which is a threshold issue to be addressed in any case brought in federal court, it is a plaintiff's burden to allege, in the complaint, facts from which his or her standing might reasonably be inferred. As the Supreme Court has observed, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). Further, the underlying claim must be non-frivolous. *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999). The Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Harbury*, 536 U.S. at 415 (citing *Lewis*, 518 U.S. at 353 n.3).

Likewise, a claim that prison officials have retaliated against a prisoner for engaging in

13

protected conduct is also grounded in the First Amendment. *Thaddeus-X*, 175 F.3d at 388. To

state a retaliation claim, a plaintiff must allege three elements: (1) that he or she was engaged in

protected conduct; (2) an adverse action was taken against him or her that would deter a person

of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was

motivated at least in part by the plaintiff's protected conduct. *Id*. at 394-99. In addition to

proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action

was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v.*

*Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X*, 175 F.3d at 396. A plaintiff has the burden of

proof on all elements. *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

Here, Plaintiff's allegations of denial of court access and retaliation fail to state claims

upon which relief may be granted, because Plaintiff has not alleged sufficient facts

demonstrating any cognizable injury or actual harm as a result of his transfer or lack of access to

his personal items in connection with said transfer. As set forth in the background of this case,

Plaintiff filed two lawsuits in the United States District Court for the Southern District of

Indiana. *See Johnson v. Carter*, 2:20cv602 and *Johnson v. Purdue*, 1:21cv201. In this case,

Plaintiff alleges that due to interference by Defendants, he missed filing deadlines in the

referenced Indiana cases. However, Plaintiff concedes that those cases were still pending at the

time he filed the instant action. Although Plaintiff alleges missed deadlines caused by retaliation

and denial of court access, he fails to identify any actual consequences resulting from the missed

deadlines.

Furthermore, this Court takes judicial notice that since Plaintiff's transfer from Indiana to

Ohio (and now back to Virginia) – and since the filing of this action – Plaintiff has requested and

14

received several extensions of time in the Indiana cases.  Specifically, in *Johnson v. Carter*, 2:20cv602, Plaintiff filed a Motion to Stay or Enlarge Time, docketed July 26, 2021, ECF No. 40, in which he set forth allegations that are nearly identical to those asserted in this Complaint, namely, that he was transferred on July 12, 2021, from the IDOC to Ohio, that he was not permitted to pack his personal property, including his legal case files, and that the transfer was designed to "destruct and sabotage [his] ability to proceed" with the Indiana cases.  *Johnson v. Carter*, 2:20cv602 (S.D. Ind. July 26, 2021) (ECF No. 40, at PAGEID # 304.)  On July 28, 2021, the court in *Johnson v. Carter* received an additional filing by Plaintiff titled Notice to Court and Request for Leave.  That document notified the court of Plaintiff's change of address and again asserted that Plaintiff was transferred in retaliation, that he was not permitted to bring his personal property and legal documents with him, and that he was denied access to stationary, the law library and phone privileges.  *Id*. (ECF No. 44, at PAGEID # 312.)  Plaintiff was granted an extension of time by Entry dated July 30, 2021, ECF No. 45.  Plaintiff subsequently filed a motion for a hearing, ECF No. 46, a request for the production of documents, ECF No. 47, and another motion to stay or for an extension of time, ECF No. 48.  The Indiana court granted Plaintiff additional extensions of time on August 5, 2021, ECF No. 50, September 2, 2021, ECF No. 55, and January 18, 2022, ECF No. 79.  On January 31, 2022, Plaintiff replied to the defendant's partial motion for summary judgment, ECF No. 82.  Similar docket activity has occurred in *Johnson v. Purdue*, 1:21cv201 (S.D. Ind.), including an Order entered November 29, 2021, extending deadlines.  (ECF No. 80.)

In short, Plaintiff has failed to allege sufficient injury to state a claim for denial of court access or retaliation.  Plaintiff alleges that, procedurally, he missed deadlines, but he fails to

plead any specific harm that resulted.  To the extent that Plaintiff has summarily alleged retaliatory transfer and denial of court access, he has failed to allege sufficient facts supporting the plausibility of his claim.  Moreover, a cursory review of the Indiana court docket shows that no discernable harm has occurred, and the Undersigned is of the opinion that whether or to what extent any employees or agents of the IDOC attempted to obstruct Plaintiff's ability to litigate his separate Section 1983 actions is best considered by the judicial officers assigned to those cases.

Plaintiff also alleges that due to interference by Defendants and the lack of access to his personal property, he was unable to comply with the two-year statute of limitations for filing an unrelated civil rights action stemming from an August 2019 incident in which he was subjected to tear gas.  (ECF No. 1, at PAGEID # 3.)  Plaintiff offers no factual framework regarding how he was prevented from filing this potential suit, especially considering that he was not prevented from filing the instant action, as well as filing multiple documents in the pending Southern District of Indiana cases.  Additionally, Plaintiff does not connect his speculative and conclusory allegations to the actions of any individual defendant.  "A plaintiff must identify the right or privilege that was violated and the role of the defendant in the alleged violation."  *Bowers v. Bodie*, No. 3:22cv13, 2022 WL 141774, *3 (M.D. Tenn. Jan. 14, 2022) (citing *Miller v. Calhoun County*, 408 F.3d 803, 827 n.3 (6th Cir. 2005)); *see also Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982) ("What is required is a causal connection between the misconduct complained of and the official sued.")  Because Plaintiff does not allege the personal involvement of any specific defendant in causing him to miss the statutory filing deadline, and further does not allege a retaliatory intent to cause him to miss the filing deadline in the anticipated case, Plaintiff has

not stated a claim upon which relief may be granted.  Although *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers, this lenient treatment has limits, and "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v. General Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

For the reasons stated, the Undersigned **RECOMMENDS** that Plaintiff's court access and retaliation claims for damages be **DISMISSED**.

### 3. Racial and Political Discrimination

In Section 2, paragraphs 15-17 of the Complaint, Plaintiff alleges that while at the reception center, OCRC, he was "confronted by defendant Harris who informed plaintiff that he was being gang profiled because he supports a predominantly Black political party, that happens to use 'Black Panther' in its name."  (ECF No. 1, at PAGEID # 3.)  Plaintiff asserts the following:

> 15. . . . Harris could tell plaintiff nothing about the party in question, not even its name, except that it was believed to have a predominantly Black membership. This racial configuration thus formed the sole basis upon which Harris, who is white, established that this party and plaintiff would be criminal gang profiled and suppressed as gang activity within the entire ODRC.  Based upon this profiling Harris informed plaintiff that he would be specially targeted by Security Threat Group (STG) or gang staff, such as himself and defendant Denney, throughout ODRC for repressive treatment and monitoring.
>
> 16.  This gang profiling of plaintiff was and is really a pretext contrived by defendants for targeting plaintiff's mail and other communications with persons in and outside the ODRC to stop his published writings and litigations based on the stated intentions of defendants set out in Section 1 above.
>
> 17.  The party which plaintiff supports is the Revolutionary Intercommunal Black Panther Party (RIBPP), which is a legal, above-ground, non-violent, Socialist and predominantly Black independent political party, that promotes and has been involved in nothing criminal nor gang-related, nor can any such things be attributed to it.  Harris and his colleagues targeting this party and plaintiff as supposedly gang or STG-affiliated is based upon racial and political

17

discrimination, i.e. because it is not a predominantly white, mainstream, pro-capitalist political party.

(*Id*. at PAGEID # 3.)

Plaintiff states that Section 2 of the Complaint sets forth a cause of action for "racial and political discrimination."  (*Id*. at PAGEID 2-3.)  The Court will construe Plaintiff's claim as an allegation that he was denied equal protection.  The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ*., 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.  *Scarbrough*, 470 F.3d at 260.

In a case involving Security Threat Group (STG) classifications, the Sixth Circuit recognized the legitimate state interest of maintaining order in prisons, noting that the "[i]dentifying, reclassifying, and separating prisoners who are members of groups that engage in planning or committing unlawful acts or acts of misconduct 'targets a core threat to the safety of

both prison inmates and officials.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 575-79 (6th Cir. 2005)

(quoting *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174

F.3d 464, 469 (4th Cir.1999)). In the context of a due process inquiry, the Sixth Circuit has

determined that an increase in security classification generally does not constitute an 'atypical

and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has

no constitutional right to remain incarcerated in a particular prison or to be held in a specific

security classification. *See, e.g., Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003);

*Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003).

Here, Plaintiff's equal protection claim fails at the outset because he does not allege that

he was treated differently than others similarly situated with respect to his "targeting" by STG

staff. Consequently, Plaintiff cannot claim that he was denied the equal protection of law.

Simply put, Plaintiff does not articulate a factual basis from which the Court could infer that he

was treated differently because of his membership in a suspect class or that any differing

treatment burdened a fundamental right. Plaintiff implies disparate treatment, but his allegations

are conclusory. Conclusory allegations of unconstitutional conduct without specific factual

allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 4. **Access to Mail and Periodicals**

Next, Plaintiff contends that during his confinement within ODRC, he was denied access

to "numerous subscriptions to various print periodicals: newspapers, magazines, newsletters."

(ECF No. 1, at PAGEID # 5.) "The First Amendment protects 'the right to receive information

and ideas,' which, as applicable in the prison context, extends to the right to receive mail and to

19

access reading material." *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting

*Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972)). A prisoner's right to receive mail, however, is

subject to prison policies and regulations that are "reasonably related to legitimate penological

interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). These policies include "'security, good

order, or discipline of the institution.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005)

(quoting *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989)). "Courts generally afford great

deference to prison policies, regulations, and practices relating to the preservation of those

interests." *Id*. (citing *Thornburgh*, 490 U.S. at 407-08). In *Turner v. Safley*, the Supreme Court

set forth the following four factors to determine whether a prison's restriction on incoming

publications was reasonably related to legitimate penological interests: "(1) whether there is a

valid, rational connection between the prison policy and the legitimate governmental interest

asserted to justify it; (2) the existence of alternative means for inmates to exercise their

constitutional rights; (3) the impact that accommodation of these constitutional rights may have

on other guards and inmates, and on the allocation of prison resources; and (4) the absence of

ready alternatives as evidence of the reasonableness of the regulation." *Harbin-Bey*, 420 F.3d at

578 (quoting *Turner*, 482 U.S. at 89)).

The Undersigned is mindful that a *pro se* complaint should be held to a less stringent

standard than one drafted by counsel. However, even by a lenient standard, Plaintiff fails to

plausibly allege sufficient facts to state a claim for relief. Plaintiff states only that "[a]t SOCF

plaintiff has been denied . . . any of his subscription media because defendant Erdos [Warden,

SOCF] requires that all subscriptions be paid for and such payments be made solely by persons

on the receiving inmate's visitation lists." (ECF No. 1, at PAGEID # 5.) Plaintiff asserts that

20

this prison policy "arbitrarily denies subscriptions like plaintiff's that are free, and limits or bans subscriptions from persons who may not want to be on an inmate's visiting list." (*Id.*) These allegations are too conclusory to state a claim for relief involving the denial of a constitutional right. The restriction at issue, as it is described by Plaintiff, appears to be content-neutral, and Plaintiff does not allege that the policy is not reasonably related to legitimate prison concerns. Furthermore, Plaintiff does not identify or describe the number or type of subscriptions that were allegedly denied during his brief stay at SOCF.

Requiring that subscriptions originate from either the inmate's account or from an individual on an inmate's visitor list is seemingly analogous to the "publisher only" policies that have routinely been upheld by the Sixth Circuit. *See, e.g.*, *Bethel v. Jenkins*, 988 F.3d 931 (6th Cir. 2021) (upholding prison policy requiring inmate's family or friends to place publication orders through approved vendors due to prison's security concerns) (citing *Bell v. Wolfish*, 441 U.S. 520, 550 (1979) (holding that a prohibition against receipt of hardback books unless mailed directly from publishers, bookclubs, or bookstores does not violate the First Amendment rights of inmates)); *Ward v. Washtenaw Cnty. Sheriff's Dep't*, 881 F.2d 325, 329-30 (6th Cir. 1989) (extending *Bell* to a "publisher only" policy for soft cover materials); *see also Miles v. Scanlon*, No. 1:21-CV-74, 2021 WL 1809834, at *6 (W.D. Mich. May 6, 2021) ("The Sixth Circuit has repeatedly upheld the validity of the publisher-only rule."). Indeed, the precedent is so overwhelming that in *Thompson v. Campbell*, the Sixth Circuit held that courts "need not engage in a *Turner* analysis of [a 'publisher only'] policy because precedent . . . binds us, in addressing this First Amendment challenge," and "[n]othing about the ['publisher only'] policy or [Plaintiff's] challenge to it overcomes these controlling precedents." 81 F. App'x 563, 569 (6th

21

Cir. 2003).  Against this legal background, the Undersigned finds no plausible inferences in the Complaint that can support Plaintiff's conclusory allegations regarding the restrictions on subscription media.

Finally, although Plaintiff names Defendant Erdos, Warden of SOCF, in connection with this claim, a complaint must allege in specific terms how each named defendant is involved, and there can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).  In this case, Plaintiff states only that Defendant Erdos has established policies with respect to subscription periodicals.  Vague and conclusory allegations of participation in civil rights violations are not sufficient to state a claim for relief against a defendant.

For these reasons stated, the Undersigned **RECOMMENDS** that Plaintiff's claim concerning his denial of access to various subscription media be **DISMISSED**.

### 5.  Solitary Confinement, Disciplinary Infractions, and Due Process

In Section 3 of the Complaint, Plaintiff alleges:

18.  While at OCRC plaintiff was held in solitary confinement and initially denied all ability to communicate with his family, friends and attorneys.  Consequently, many people on the outside began calling and emailing OCRC, defendant Chambers-Smith's office, defendant Clarke's office and others complaining about this treatment.  It was then established by the OCRC administration that plaintiff would be allowed to use the telephone daily and a JPay kiosk that allowed those confined at OCRC to correspond by emails with persons on the outside.

19.  On July 23, 2021, defendants Church and Corey came to plaintiff's assigned cell to allow him out for his daily recreation period.  Church did not want to let plaintiff out to use the phone, so he refused plaintiff's recreation and had defendant Corey fabricate a disciplinary infraction claiming falsely that plaintiff refused his own recreation period and threatened them.  This fabricated report was used to strip plaintiff of the ability to communicate with outside people and without notice or opportunity for a fair hearing . . . .

20.  In the ODRC defendant Chambers-Smith enforces an inmate disciplinary procedure that allows staff to strip inmates of the ability to communicate with

outside people and other punishments affecting constitutionally protected rights, based upon infractions that the inmate receives no prior written notice of nor the opportunity to prepare any defense against nor submit evidence to refute.  This is the procedure plaintiff was subjected to on the infraction that Corey fabricated against him.  The very fact that no due process is afforded encourages ODRC staff to fabricate reports against inmates.

(ECF No. 1, at PAGEID # 4.)

Plaintiff characterizes the claim set forth in Section 3 as asserting the denial of due process.  (*Id*. at PAGEID # 2.)  "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  To the extent Plaintiff argues that he was deprived of liberty without due process when he was placed in solitary confinement, the Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998).  Changes in the conditions of confinement, such as placement in administrative segregation, "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983), and is only considered atypical and significant in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir.

23

2010).  Courts consider the nature and duration of a stay in segregation to determine whether it imposes an atypical and significant hardship, such as when a prisoner's complaint alleges that he is subject to an *indefinite* administrative segregation, or a confinement that is excessively long in duration. *Joseph*, 410 F. App'x at 868 (citing *Harbin-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)). *See also Sandin*, 515 U.S. at 486 ("We hold that [the inmate's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); *Powell v. Washington*, 720 F. App'x 222 (6th Cir. 2017) (prisoner's six-month confinement in administrative segregation was insufficient to constitute violation of prisoner's due process rights); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003) (holding that neither "punishment of more than 60 days of punitive segregation" nor a change in security classification "give rise to a protected Fourteenth Amendment Liberty interest").

Here, Plaintiff has not alleged that he was placed in segregation indefinitely or for an excessively long period of time.  Nor has he alleged that the conditions were unduly harsh.  In fact, Plaintiff provides no meaningful factual allegations to support his claim, including the duration of any time spent in isolation.  Plaintiff alleges only that he was held in solitary confinement and denied the ability to communicate with "family, friends and attorneys" but that he was subsequently granted privileges in response to calls and emails from "people on the outside."  It is apparent that Plaintiff spent no more than two weeks at OCRC, as he departed Wabash Valley Correctional Facility in Indiana on July 12, 2021, and was transferred from OCRC to SOCF on July 29, 2021.  Plaintiff admits that not all of that time was spent in segregation.  For these reasons, Plaintiff has failed to state a claim that his placement in solitary

24

confinement implicated federal due process or Eighth Amendment concerns, and the Undersigned **RECOMMENDS** that the Court **DISMISS** this claim as to all Defendants.

Plaintiff also alleges that on July 23, 2021, and while incarcerated at OCRC, Defendant Corey "fabricated" a disciplinary infraction against him, alleging that Plaintiff refused to exit his cell for his daily recreation period, and also that Plaintiff threatened Defendants Corey and Church. Plaintiff alleges that he was unaware of the infraction until he arrived at SOCF, and Defendant McAllister informed Plaintiff that McAllister was going to hear the infraction on the spot. Plaintiff alleges that he received no written notice of the infraction and was not allowed an opportunity to prepare a defense or submit evidence. According to Plaintiff, the infraction resulted in Plaintiff being placed on telephone and commissary restriction for thirty (30) days. (ECF No. 1, at PAGEID # 4.)

In the context of a prison disciplinary proceeding, a prisoner does not have "the full panoply of rights due a defendant" in a criminal prosecution. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). A prisoner's ability to challenge a prison misconduct procedure depends on whether the conviction implicates a liberty interest. In the seminal case of *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set forth minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits due to disciplinary infractions. But *Wolff* did not create a free-standing right to process in all prison disciplinary proceedings. To the contrary; the right to process arises only when the prisoner faces a loss of liberty, or a significant, atypical deprivation. *See Sandin*, 512 U.S. 472.

To the extent that Plaintiff complains about the timing and handling of his disciplinary hearing and the resulting commissary restriction, he has failed to state a constitutional claim.

25

The Complaint fails to set forth facts indicating that Plaintiff had a liberty interest in the outcome of the disciplinary hearing, such as a loss of sentence credit, nor does the Complaint allege that the punishment Plaintiff received – *i.e.* a commissary restriction – imposed an atypical and significant hardship sufficient to violate due process. *See Carter v. Tucker*, 69 F. App'x 678 (6th Cir. 2003) (affirming dismissal of claim that disciplinary hearing was conducted less than 24 hours after the charge and plaintiff was not allowed to prepare a defense, when the plaintiff "merely alleges a loss of privileges and placement in segregation" and "these penalties do not impose an atypical and significant hardship, and there is no liberty interest in freedom from those penalties"). For these reasons, the Undersigned **RECOMMENDS** that this claim be **DISMISSED**.

Finally, Plaintiff references the denial of substantive due process in his Complaint. Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right. *Mertik v. Blalock*, 983 F.2d 1353,1367 (6th Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent. *Id*. at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id*.

26

Because Plaintiff asserts without explanation a violation of due process, any claim for the violation of substantive due process must necessarily derive from a close reading of the facts alleged. However, even interpreted indulgently, Plaintiff has not described any set of facts that would suggest that he is making a claim for a violation of his substantive due process rights. Accordingly, Plaintiff has failed to state a substantive due process claim upon which relief may be granted against Defendants.

6. **SOCF Deliberate Indifference Claim**

In Section 4 of the Complaint, Plaintiff alleges that while at SOCF, he was targeted based on his past writings and litigations and "marked" by Defendant McAllister. According to Plaintiff, "McAllister threatened that plaintiff was going to be set up to be assaulted, would not receive any property, and he expressed not knowing why plaintiff was housed in general population and not solitary confinement." (ECF No. 1, at PAGEID # 4.) Plaintiff contends that McAllister referred to himself and other SOCF staff as "real dirty cops who are worse than the Klan." (*Id*.) Plaintiff further alleges that Defendant McAllister and "others" offered to pay other inmates "in contraband to attack plaintiff or set him up to be attacked by staff under the guise of responding to a fight between plaintiff and other inmates which they have engineered." (*Id*. at PAGEID # 5.) He alleges that while at SOCF, he was "subjected to treatments and conditions calculated to place him in imminent danger of death and serious physical harm and fear of such harm, by defendants McAllister, Denney, Erdos, and many others." (*Id*.) Specifically, Plaintiff states:

> 27. [Defendants McAllister, Denney, Erdos and others] have repeatedly tried to incite other inmates and groups to attack plaintiff and into violent altercations with him, by spreading false rumors against plaintiff that he is an informant, they have offered many inmates payment in contraband to attack

plaintiff in groups, with weapons, and to simply punch him and retreat informing them that responding staff are aware and prepared to 'take over from there,' namely to beat plaintiff and portray resultant injuries as having been sustained during the altercation with the other inmate(s).

28.  The threat and preparation to subject plaintiff to assault by staff and/or inmates spans the entire security staff at SOCF.  Plaintiff and his outside contacts have been confronted by numerous inmates with evidence of various SOCF staff's offers to pay them in contraband to attack plaintiff or set him up to be attacked by staff under the guise of responding to a fight between plaintiff and other inmates which they have engineered.  These offers have been made by defendant McAllister and others, and efforts to incite others against plaintiff have been made by defendant Denney and others.

(*Id.* at PAGEID # 5.)

Plaintiff characterizes the allegations set forth in Section 4 as stating a claim for deliberate indifference to his safety.  (*Id.* at PAGEID # 2.)  "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted).  A deliberate indifference claim has both objective and subjective components, and prison officials can be held liable for the failure to protect an inmate only when the inmate shows: (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) prison officials had the "state of mind . . . of 'deliberate indifference' to inmate health or safety."  *Farmer*, 511 U.S. at 834. (citations omitted).  Thus, to raise a cognizable constitutional claim for deliberate indifference, an inmate must show the alleged mistreatment was objectively serious and the defendant subjectively ignored the risk to the inmate's safety.  *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citing *Farmer*).  "[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  *Farmer*, 511 U.S. at 836.

28

Applying the above standard, Plaintiff fails to state a claim with respect to his alleged Eighth Amendment violation.  In order to state a claim for relief, a plaintiff must "set forth the circumstances, occurrences, and events upon which his allegations [are] based." *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (citing *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 42-43 (6th Cir. 1988)).  This, Plaintiff has not done.  Plaintiff does not allege that he was assaulted, does not identify any inmates that were solicited to attack him, and generally fails to allege the existence of facts or circumstances indicating that he faced anything more than a hypothetical risk of harm.  "Exposure to hypothetical danger does not rise to the level of an Eighth Amendment violation for placing an inmate in substantial risk of serious harm." *Wright v. J & S Extradition Services, LLC*, No. 3:11-0464, 2012 WL 1681812, at *8 (M.D. Tenn. May 11, 2012); s*ee also Lewis v. McClennan*, 7 F. App'x 373, 375 (6th Cir. 2001) (finding the plaintiff failed to state a claim where he did not allege "specific facts which would show that he was in danger of being assaulted by the other inmates" and "at most . . . alleged a hypothetical risk of danger to his safety prior to the attack").  Moreover, to the extent Plaintiff alleges certain defendants threatened him, the Sixth Circuit has held that "verbal harassment" is not punishment that violates the Eighth Amendment.  *See*, *e.g.*, *Miller*, 109 F. App'x at 65 (prison guard's threat to sexually assault prisoner failed to state Eighth Amendment claim); *Harrison v. Crick*, No. 5:19-CV-P75-TBR, 2019 WL 4345987, at *3 (W.D. Ky. Sept. 12, 2019) ("The Eighth Amendment proscribes punishments which involve the unnecessary and wanton infliction of pain" and "harassing or threatening language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation.").

In sum, Plaintiff's conclusory allegations are insufficient to state a claim for deliberate indifference to his safety. The Undersigned **RECOMMENDS** Plaintiff's claim be **DISMISSED**.

## IV. CONCLUSION

Having performed the initial screen of the Complaint, the Undersigned **RECOMMENDS** that the Complaint in its entirety be **DISMISSED** pursuant to 28 U.S.C. § 1915A, including Plaintiff's claims for injunctive and declaratory relief, as well as Plaintiff's claims for money damages against the Defendants in their individual capacities.

## V. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

30

magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal. . . .) (citation omitted).

 s/ *Elizabeth A. Preston Deavers* (3/4/2022)
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE